# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

Keith Edward Ross,
Petitioner Below, Petitioner

**FILED**

September 18, 2015

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

vs) **No. 14-1093** (Mercer County 13-C-543)

Patrick Mirandy, Warden,
St. Mary's Correctional Center,
Respondent Below, Respondent

## MEMORANDUM DECISION

Petitioner Keith Edward Ross, by counsel Paul R. Cassell, appeals the "Order Denying Petitioner's Petition for Writ of Habeas Corpus," entered by the Circuit Court of Mercer County on September 25, 2014. Respondent Patrick Mirandy, Warden, St. Mary's Correctional Center, by counsel Shannon Frederick Kiser, filed a response. Petitioner filed a reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In the February 2011 term of the Mercer County grand jury, petitioner was indicted on three counts of fraudulent use of an access device, one count of credit card forgery, one count of breaking and entering, one count of petit larceny, and one count of conspiracy. Petitioner and a co-defendant were accused of breaking the window of a vehicle, stealing a credit card and other items from inside the vehicle, and using the victim's card to make unauthorized purchases. The case proceeded to a jury trial in December of 2011, during which the jury heard from eight witnesses and viewed surveillance video showing petitioner and his co-defendant using the stolen card to make purchases.[1]

---

[1] In this Court's June 7, 2013, memorandum decision affirming petitioner's convictions, the trial evidence was described as follows:

> The victim testified at trial that when she left work and got in her vehicle, her car seat was covered in broken glass. She then noticed her purse was missing. When she called to cancel the credit cards in her purse, she learned they had been used while she was working. Each of the transactions, at three different locations, was unauthorized. The manager of one of the locations testified that her store had

(continued . . .)

1

Petitioner was acquitted of breaking and entering, but convicted on all other charges in the indictment. The circuit court sentenced petitioner to consecutive definite prison terms of ten years for each count of fraudulent use of an access device, an indeterminate term of one to ten years for credit card forgery, an indeterminate term of one to five years for conspiracy, and one year for petit larceny. The court suspended the prison sentences in lieu of five years of supervised probation on all of the charges except for the two counts of fraudulent use of an access device, resulting in an effective determinate prison sentence of twenty years.

Petitioner appealed to this Court, which affirmed his convictions. *See State v. Ross,* No. 12-0441, 2013 WL 2462166, at *3 (W.Va. June 7, 2013). On December 19, 2013, petitioner filed a pro se petition for a writ of habeas corpus. Thereafter, the circuit court appointed counsel, who filed an amended habeas petition and *Losh* checklist on petitioner's behalf on April 24, 2014.[2] The circuit court conducted an omnibus hearing on September 11, 2014, and by order entered on September 25, 2014, denied petitioner's claims for habeas relief. Petitioner now appeals to this Court.

We have set forth our standard for reviewing the denial of a habeas petition as follows:

> multiple cameras and that one of them is positioned directly over the counter. The owner of another location testified that he provided the tapes from his four cameras to the state trooper investigating that transaction. The trooper testified, without objection, that he pulled the car over that matched the video from one of the locations and that the driver (petitioner) appeared to be the same person in the video using the card for one of the transactions. The trooper identified petitioner in court as the driver he stopped. He also testified that he heard petitioner say after the arrest, "All this over the swipe of a credit card?" The video showed that petitioner and the co-defendant entered the store together and that the co-defendant purchased three packs of cigarettes standing beside of petitioner. The video shows the clerk getting a carton of cigarettes, the swipe of the card, and petitioner signing the transaction slip.

*State v. Ross,* No. 12-0441, 2013 WL 2462166, at *3 (W.Va. June 7, 2013).

[2] The *Losh* checklist was filed pursuant to *Losh v. McKenzie,* 166 W.Va. 762, 277 S.E.2d 606 (1981). Therein, petitioner alleged the following grounds for habeas relief: (1) failure of counsel to take appeal to the United States Supreme Court; (2) consecutive sentences for the same transaction; (3) erroneous information contained in the pre-sentence report; (4) ineffective assistance of counsel; (5) no preliminary hearing; (6) failure to provide a copy of the indictment to the petitioner; (7) trial court's refusal to grant a continuance; (8) refusal to subpoena witnesses; (9) constitutional errors in evidentiary rulings; (10) improper instructions to the jury; (11) prejudicial statements made by the prosecutor; (12) sufficiency of the evidence; (13) petitioner's absence from part of the trial proceedings; (14) more severe sentence than expected; (15) excessive sentencing; and (16) mistaken advice of trial counsel regarding parole or probation eligibility.

In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review.

Syl. Pt. 1, *Mathena v. Haines,* 219 W.Va. 417, 633 S.E.2d 771 (2006).

Petitioner raises three assignments of error, the first of which -- that he received ineffective assistance of counsel during his trial -- comprises the lion's share of his argument on appeal. Claims of ineffective assistance are governed by the following standard, which is set forth in syllabus points five and six of *State v. Miller,* 194 W.Va. 3, 459 S.E.2d 114 (1995):

> 5.     In the West Virginia courts, claims of ineffective assistance of counsel are to be governed by the two-pronged test established in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984): (1) Counsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.

> 6.     In reviewing counsel's performance, courts must apply an objective standard and determine whether, in light of all the circumstances, the identified acts or omissions were outside the broad range of professionally competent assistance while at the same time refraining from engaging in hindsight or second-guessing of trial counsel's strategic decisions. Thus, a reviewing court asks whether a reasonable lawyer would have acted, under the circumstances, as defense counsel acted in the case at issue.

Petitioner claims that his trial counsel was ineffective on eight separate fronts, which we will address individually according to the standard outlined in *Miller,* above. First, petitioner challenges his counsel's waiver of petitioner's preliminary hearing, contending that the preliminary hearing is a critical stage in the proceeding necessitating his and his counsel's presence. *See* Syl., *State v. Stout,* 172 W.Va. 763, 310 S.E.2d 695 (1983) ("A preliminary hearing, when accorded an accused by a justice of the peace [now "magistrate"] pursuant to Code, 1931, 62-1-8, as amended, is a critical stage in a criminal proceeding to which the right to counsel, guaranteed by the Sixth Amendment to the Constitution of the United States, attaches, and a denial of counsel in those circumstances constitutes error for which a defendant is entitled to relief, unless it is clear beyond a reasonable doubt that the denial of counsel was harmless error.") (citation omitted).  However, petitioner fails to appreciate the distinction between the right to counsel at the preliminary hearing and the absence of a constitutional right to a preliminary hearing in the first place. *See* Syl. Pt. 1, *State ex rel. Rowe v. Ferguson,* 165 W.Va. 183, 268 S.E.2d 45 (1980) ("A preliminary hearing in a criminal case is not constitutionally required."). Accordingly, we do not conclude that counsel's waiver of petitioner's preliminary hearing constituted ineffective assistance of counsel.

3

Second, petitioner challenges the adequacy of his counsel's investigation. Petitioner argues that, although his counsel at trial raised the issue of an apparent discrepancy between the time stamps on the video surveillance and the receipts, counsel did not force the investigating officer to explain that discrepancy. Additionally, petitioner argues that his counsel failed to investigate petitioner's co-defendant, who, according to petitioner, drafted a letter exonerating petitioner, despite implicating petitioner in the crimes at his own sentencing.[3] In syllabus points three and four of *State ex rel. Daniel v. Legursky,* 195 W.Va. 314, 465 S.E.2d 416 (1995), we held as follows:

> 3.      The fulcrum for any ineffective assistance of counsel claim is the adequacy of counsel's investigation. Although there is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance, and judicial scrutiny of counsel's performance must be highly deferential, counsel must at a minimum conduct a reasonable investigation enabling him or her to make informed decisions about how best to represent criminal clients. Thus, the presumption is simply inappropriate if counsel's strategic decisions are made after an inadequate investigation.

> 4.      In determining whether counsel's conduct falls within the broad range of professionally acceptable conduct, this Court will not view counsel's conduct through the lens of hindsight. Courts are to avoid the use of hindsight to elevate a possible mistake into a deficiency of constitutional proportion. Rather, under the rule of contemporary assessment, an attorney's actions must be examined according to what was known and reasonable at the time the attorney made his or her choices.

In the present case, the record plainly demonstrates that petitioner and the co-defendant were on video using the victim's credit card. Counsel made as much of an issue of the discrepancy as he could, given the video evidence of petitioner's guilt. As for the decision not to investigate and rely on the co-defendant's testimony, counsel made a strategic decision that this Court will not second-guess. Given the volatility of the co-defendant's testimony, petitioner cannot demonstrate that he was prejudiced by his counsel's inaction; petitioner might very well have been in a worse position had his co-defendant's testimony been introduced. Accordingly, we find no error in the circuit court's ruling with respect to counsel's investigation.

Next, petitioner argues that his counsel presented an inadequate and ill-prepared defense. Petitioner argues that his counsel (1) provided an incomplete alibi defense, and (2) erroneously contended that the use of a computer was required as an essential element for a conviction for

---

[3] Counsel testified in the omnibus hearing that he was not provided a copy of the letter from the co-defendant purporting to exonerate petitioner until after petitioner's trial and after the co-defendant's own sentencing hearing, wherein the co-defendant fully implicated petitioner in the crimes.

4

fraudulent use of an access device under West Virginia Code § 61-3C-13.[4] Counsel initially interpreted the statute to require that a computer be involved in the fraudulent access, not just a credit card. Counsel's interpretation of the statute as requiring the use of a computer was a defense strategy that was rejected by the circuit court well before trial. Petitioner was aware of the circuit court's ruling in this regard and still rejected the ongoing plea opportunity offered by the State. As a result, petitioner's counsel was in a position of having to assert an incomplete alibi defense by calling petitioner's mother and sister, presumably in an effort to remove

---

[4] The full text of West Virginia Code § 61-3C-13 reads as follows:

(a) As used in this section, the following terms shall have the following meanings:

(1) "Access device" means any card, plate, code, account number, or other means of account access that can be used, alone or in conjunction with another access device, to obtain money, goods, services, or any other thing of value, or that can be used to initiate a transfer of funds (other than a transfer originated solely by paper instrument);

(2) "Counterfeit access device" means any access device that is counterfeit, fictitious, altered, or forged, or an identifiable component of an access device or a counterfeit access device;

(3) "Unauthorized access device" means any access device that is lost, stolen, expired, revoked, canceled, or obtained without authority;

(4) "Produce" includes design, alter, authenticate, duplicate, or assemble;

(5) "Traffic" means transfer, or otherwise dispose of, to another, or obtain control of with intent to transfer or dispose of.

(b) Any person who knowingly and willfully possesses any counterfeit or unauthorized access device shall be guilty of a misdemeanor, and, upon conviction thereof, shall be fined not more than one thousand dollars or confined in the county jail for not more than six months, or both.

(c) Any person who knowingly, willfully and with intent to defraud possesses a counterfeit or unauthorized access device or who knowingly, willfully and with intent to defraud, uses, produces or traffics in any counterfeit or unauthorized access device shall be guilty of a felony, and, upon conviction thereof, shall be fined not more than ten thousand dollars or imprisoned in the penitentiary for not more than ten years, or both.

(d) This section shall not prohibit any lawfully authorized investigative or protective activity of any state, county or municipal law-enforcement agency.

petitioner from the crimes enough for a jury to place greater blame on the co-defendant. However, neither witness could deny that petitioner and the co-defendant were together on the night in question. Again, as we concluded with the previous argument, counsel made the most of the case he had. Petitioner's argument that his counsel was ineffective in this respect, therefore, fails.

Fourth, petitioner argues that his counsel permitted improper "other bad act" evidence to be introduced at trial. Petitioner points to the testimony of the arresting officer, who stated during the State's direct examination that petitioner initially gave a false name. Petitioner claims that his counsel was ineffective for failing to object. The habeas court recognized that the State did not solicit the officer's testimony regarding petitioner's giving a false name, and quickly moved on, rather than dwelling on it. Additionally, the habeas court observed, and we agree, that petitioner's counsel's strategy in not objecting – and thereby drawing additional attention to the officer's comment – was not unreasonable, and certainly did not constitute ineffective assistance of counsel.

Fifth, petitioner contends that his counsel failed to preserve petitioner's right to remain silent. Petitioner states that the arresting officer commented during his testimony that petitioner elected not to give a statement. As distinguished from petitioner's argument above, in this instance, petitioner's counsel objected and the objection was sustained. The circuit court advised the jury of petitioner's right to remain silent. Therefore, we cannot conclude that counsel's actions were unreasonable or that they prejudiced petitioner.

Sixth, petitioner again targets counsel's interpretation of West Virginia Code § 61-3C-13 and contends that his counsel's flawed legal analysis resulted in petitioner refusing the State's plea bargain, which exposed him to much harsher prison sentence. As we noted above, the circuit court rejected counsel's statutory interpretation argument prior to trial; petitioner was aware and yet continued in his refusal to engage in plea bargaining. Under the record on appeal, the habeas court found that petitioner's counsel properly advised petitioner of the possible penalties should petitioner be convicted and petitioner opted to go to trial. Therefore, we cannot conclude that counsel's flawed statutory interpretation was ineffective in the context of obtaining a beneficial plea bargain on petitioner's behalf.

Seventh, petitioner contends that his counsel did not address factual errors in the presentence report and failed to adequately prepare petitioner for sentencing. Contrary to petitioner's argument, the record reflects that his counsel met with him to prepare for sentencing, discussed petitioner's right to allocution, and requested a continuance to review the specifics of the presentence report. Before the habeas court, counsel could not recall all of the specific information discussed with petitioner in preparation for sentencing, but the record is clear that petitioner cannot show that he was prejudiced by any failure by counsel in this respect. At petitioner's sentencing, the circuit court noted that overwhelming amount of negative information in the report, such as a collection of forty-five charges amassed by petitioner across three states, leading the court to conclude that petitioner posed a high likelihood of recidivism. We, therefore, cannot conclude that petitioner's counsel was ineffective in preparing petitioner for or in any facet of handling petitioner's sentencing.

Petitioner's final argument that his counsel was ineffective is that his counsel failed to appeal his conviction to United States Supreme Court. As the habeas court properly concluded, petitioner is not entitled to such an appeal pursuant to *Ross v. Moffit,* 417 U.S. 600 (1974) (holding that neither the Due Process Clause nor the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution afford an indigent defendant the right to only a discretionary appeal). Also, the State's Public Defender Services is unable to cover the cost of such an appeal according to West Virginia Code § 29-21-2(2) (stating that legal representation provided pursuant to the provisions of this article is limited to the court system of the state of West Virginia). Finally, the habeas court found that there was no agreement between counsel and the petitioner for counsel to file an appeal to the United States Supreme Court. We note that counsel did file an appeal to this Court on petitioner's behalf.

In sum, according to the standards set forth in *Miller* and *Strickland*, petitioner has failed to demonstrate any error with respect to the habeas court's ruling on the issue of ineffective assistance of counsel. We turn now to petitioner's remaining two assignments of error.

In his second assignment of error, petitioner argues that he received a disproportionate sentence when compared to that of his co-defendant, who was sentenced to two to fifteen years in prison. Under Article III, Section 5 of the West Virginia Constitution, "[p]enalties shall be proportioned to the character and degree of the offense." However, with respect to comparing sentences of co-defendants, this Court has held that

> [d]isparate sentences for codefendants are not per se unconstitutional. Courts consider many factors such as each codefendant's respective involvement in the criminal transaction (including who was the prime mover), prior records, rehabilitative potential (including post-arrest conduct, age and maturity), and lack of remorse. If codefendants are similarly situated, some courts will reverse on disparity of sentence alone.

Syl. Pt. 2, *State v. Buck,* 173 W.Va. 243, 314 S.E.2d 406 (1984).

In the present case, petitioner was convicted of multiple offenses, whereas his co-defendant opted to plead guilty as part of an agreement. Second, the circuit court based petitioner's sentence on the nature of the crimes themselves, but also on petitioner's long criminal history and likelihood for recidivism.[5] Even with all the negative information in petitioner's presentence report, the circuit court suspended petitioner's prison sentence on all but two of his convictions. Therefore, we cannot conclude that petitioner's effective sentence of twenty years in prison is unconstitutionally disproportionate.

Petitioner's final assignment of error is that he was denied a fair trial because of the cumulative effect of the errors below. Specifically, petitioner argues that "the overwhelming

---

[5] As respondent points out, petitioner did not make the co-defendant's criminal history part of the record on appeal.

7

evidence of ineffective assistance of counsel invades all aspects of the case and the trial court's failure to grant relief is erroneous." We have held that

> [w]here the record of a criminal trial shows that the cumulative effect of numerous errors committed during the trial prevented the defendant from receiving a fair trial, his conviction should be set aside, even though any one of such errors standing alone would be harmless error.

Syl. Pt. 12, *State v. Guthrie,* 194 W.Va. 657, 461 S.E.2d 163 (1995) (citations omitted).

Here, as respondent correctly argues, the only potential errors in petitioner's trial are the arresting officer's unsolicited reference to petitioner offering a false name and stating that petitioner chose not to give a statement. In the first instance, the State quickly moved on from the questioning, and in the second instance, the circuit court properly directed the jury to disregard the officer's testimony and reminded the jury that petitioner is presumed innocent and has the right to remain silent. Neither of these potential errors warrants reversal of the habeas court's order. Accordingly, we reject petitioner's claim that he was denied a fair trial as a result of the cumulative effect of numerous errors below.

For the foregoing reasons, we affirm the circuit court's order denying petitioner's petition for a writ of habeas corpus.

Affirmed.

**ISSUED:** September 18, 2015

**CONCURRED IN BY:**

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Menis E. Ketchum
Justice Allen H. Loughry II